**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JASMINE GONZALEZ,

        Plaintiff,

v.                                                     Case No. 3:18-cv-1067-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER[2]

### I. Status

Jasmine Gonzalez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("Administration('s)") final decision denying a request for wavier of recoupment of an overpayment of supplemental security income ("SSI") and assessment of the overpayment against Plaintiff in the amount of $26,880.44. Plaintiff was found to be disabled by the Administration and entitled to SSI as of about November 9, 1995. Transcript of Administrative Proceedings (Doc. No. 17; "Tr." or "administrative transcript"), filed December 21, 2018, at 15. In March 2009, Plaintiff was notified that she was overpaid SSI benefits because of self-employment income. Tr. at 26-34. The

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. Nos. 24-25), filed April 23-24, 2019; Reference Order (Doc. No. 26), entered April 24, 2019.

Administration continued sending Plaintiff notices relating to overpayment of benefits from 2009 through mid-2012. Tr. at 36-75.

In May 2014, Plaintiff filed a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate," in which Plaintiff requested that the Administration waive collection of the overpayment. Tr. at 76-83. Plaintiff checked the box indicating, "The overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons." Tr. at 76. Evidently, Plaintiff had changed her name and/or social security number at some point due to either "safety reasons" or "identity theft."[3] Tr. at 17, 77, 96, 270. When asked to explain why she should not be liable for the overpayment, Plaintiff indicated that she believed that her prior change of identity meant that she "would not be liable for any overpayment on [her] record." Tr. at 77.

On September 4, 2014, the Administration denied Plaintiff's request for a waiver, explaining that Plaintiff had a right to a "personal conference" to discuss the matter.[4] Tr. at 84-85. The conference was scheduled for October 6, 2014. Tr. at 84. According to the Administration, Plaintiff instead requested a phone conference, which was held on November 13, 2014. Tr. at 135. Plaintiff yelled at the person conducting the phone conference, and the conference was unable to be completed because "she [would] not

---

[3] Some of the notices in the administrative transcript are addressed to a different name than Plaintiff's current name. The Court assumes that these notices were sent prior to the Administration being notified of Plaintiff's identity change. For Plaintiff's privacy reasons, the other name will not be stated herein.

[4] In December 2014, Plaintiff submitted another "Request for Waiver of Overpayment Recovery or Change in Repayment Rate." Tr. at 86-93. The Administration denied that request on March 17, 2015 because it was duplicative of the previously-filed request for a waiver. Tr. at 94-95.

stop yelling." Tr. at 135 (capitalization omitted). From what the person was able to tell through the yelling, the gist of Plaintiff's argument, again, was that the change in identity should wipe out any overpayment collection efforts. Tr. at 135. Because this was "obviously not true," and because the interview could not be completed, the request to waive overpayment was again denied. Tr. at 135 (capitalization omitted).[5]

In April 2015, Plaintiff submitted a letter and form requesting reconsideration of the denial of the overpayment waiver request. Tr. at 103-05. Plaintiff claimed she had not been given the opportunity for an "informal conference" and had not received "a formal decision" on the matter. Tr. at 103. On June 19, 2015, the Administration sent Plaintiff a notice indicating that "the original decision to deny [her] waiver request [was] affirmed." Tr. at 106. As grounds, the Administration explained that Plaintiff "continuously failed to report [her] self employment income and appear[ed] to have had additional self employment income in 2013 and again in 2014 which [she had] also failed to report." Tr. at 106; see also Tr. at 126-27 (reconsideration explanation). The notice explained Plaintiff's rights, including the right to a hearing before an ALJ. Tr. at 106.

---

[5] Plaintiff submitted a letter on March 24, 2015 requesting that an administrative law judge ("ALJ") decide the matter. Tr. at 96. But, this request was premature, as Plaintiff had not at that time completed the necessary steps in the administrative process to have the right to a hearing before an ALJ. Later, on July 27, 2015, Plaintiff sent a letter complaining about the "Rochester and Greece [NY] Field Offices" of the Administration, stating that she never received "anything" about her request for a hearing. Tr. at 110. (Plaintiff lived in Rochester, NY during most of the administrative process; she relocated to Florida in approximately early 2016. See Tr. at 124-25).

In July 2015, Plaintiff filed a request for a hearing before an ALJ.[6] Tr. at 109, 118-23. The Administration sent Plaintiff a letter on February 5, 2016 acknowledging Plaintiff's request for a hearing and indicating that the hearing may be held via videoconference unless Plaintiff notified the Administration within 30 days that she did not want a videoconference hearing. Tr. at 141-43. The letter also stated that Plaintiff could "choose to have a representative help" her for the hearing and that if she wanted a representative, she "should find one quickly so that person [could] start preparing [her] case." Tr. at 142; see also Tr. at 145-46 (brochure explaining right to representation), 147-49 (lists of organizations that may be able to help). Further, the letter explained that Plaintiff had the right to submit evidence and to review her file. Tr. at 142-43.

On April 5, 2017, the Administration sent Plaintiff a letter explaining that her "file [was] ready for review" and indicating that Plaintiff would be notified when her hearing was scheduled. Tr. at 166. On April 24, 2017, a Notice of Hearing was sent to Plaintiff, and the hearing was scheduled for August 30, 2017. Tr. at 181; see also Tr. at 210 (reminder). Plaintiff was again advised of the right to representation. Tr. at 187-88. On July 19, 2017, Plaintiff called the Administration to explain she had jury duty on the date of the scheduled hearing. Tr. at 209. A representative of the Administration advised her to call back if indeed she was called upon for jury service so the hearing could be rescheduled.

---

[6] Plaintiff also appeared in person in July 2015, was "very aggressive and loud," and "ripped up [the] reconsideration denial letter that went out on 6/19/215." Tr. at 151 (capitalization omitted).

Tr. at 209. The representative also provided Plaintiff with a list of potential hearing representatives. Tr. at 209.

In August 2017, Plaintiff submitted a written acknowledgement of receipt of the notice of hearing, but she requested that the hearing be postponed so that she could find a representative. Tr. at 228-29. Plaintiff signed a document on August 30, 2017 indicating, "I understand that I am entitled to have only one postponement in order to obtain a representative (either an attorney or other qualified representative) and that any subsequent hearing will be rescheduled at least 20 days from today." Tr. at 229. The document also states, "I have been advised, both orally and in writing, that if I do not have a representative by the next scheduled hearing, I must be prepared to proceed with the hearing without a representative and, absent extraordinary circumstances, no further postponement will be granted in order for me to get a representative." Tr. at 229 (emphasis omitted).

Plaintiff's hearing was rescheduled for January 8, 2018. Tr. at 230-34. As part of the notice of rescheduling the hearing, Plaintiff was once again advised of her rights, including the right to representation. Tr. at 230-34, 236-37. Plaintiff acknowledged receipt of the notice and indicated she would be present. Tr. at 240. The hearing date was changed again, this time to January 16, 2018, to accommodate Plaintiff. See Tr. at 15, 251. Because the date was changed, Plaintiff signed a "waiver of timely written notice of hearing" in which Plaintiff waived the 75-day advance notice requirement. Tr. at 251.

The hearing before the ALJ was held on January 16, 2018. Tr. at 261-77. Plaintiff appeared in person and represented herself. See Tr. at 261. During the hearing, Plaintiff confirmed that she had engaged in self-employment (babysitting) for a number of years for which she filed tax returns with the Internal Revenue Service, Tr. at 266-67, but she indicated she was not aware that employment would affect her SSI payments, Tr. at 265, 268. Plaintiff did not complain during the hearing about a lack of representation. See generally Tr. at 261-77.

On February 21, 2018, the ALJ issued a Decision denying Plaintiff's request for a waiver of recovery of the overpayment and finding that Plaintiff is liable for repayment of $26,880.44 in overpaid benefits. Tr. at 15-18. Plaintiff then requested review by the Appeals Council and submitted additional evidence in support of her request. Tr. at 5, 9; see Tr. at 252-57, 258, 259-60. On August 14, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 6-8, making the ALJ's Decision the final decision of the Commissioner.

Plaintiff initiated this action pro se on September 4, 2018 by filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision. Specifically, the Complaint states that the Administration "wanted to come after [Plaintiff] in [her] new name for a overpayment [sic]" and the ALJ "never ask[ed Plaintiff] for [her] evidence that would [have] clear[ed her.]" Id. at 4. Plaintiff further claimed, "I don[']t owe no money" and "I didn[']t work for those years." Id. Defendant appeared and answered the Complaint on December 21, 2018 (Doc. No. 16).

On December 26, 2018, the Court entered a Scheduling Order (Doc. No. 18) directing the parties to file memoranda in support of their respective positions. Plaintiff's memorandum was due on February 25, 2019; Defendant's was due on April 26, 2019. Id. Plaintiff was ordered to "identify with particularity the grounds upon which the administrative decision is being challenged." Id. at 1. Plaintiff was warned that "[a]ny such challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards" and that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development." Id.

On February 19, 2019, Plaintiff moved for an extension of time to file her memorandum and for the appointment of counsel to represent her in this appeal (Doc. No. 19). The undersigned entered an Order on February 21, 2019 granting an extension of time but denying the request for court-appointed counsel (Doc. No. 21). Plaintiff was provided with the contact information for the Legal Information Program of the Jacksonville Chapter of the Federal Bar Association and encouraged to contact that resource or another legal aid program. See id. at 3.

Plaintiff filed a "Motion 2nd Answer" on March 20, 2019, that the undersigned construes as the memorandum required by the Court's Scheduling Order (Doc. No. 22; "Pl.'s Mem.").[7] Plaintiff discusses a number of attached exhibits, and she generally contends the Administration violated its policies by holding a hearing without her being

---

[7] Citations to Pl.'s Mem. follow the pagination assigned by the Court's electronic filing system (CM/ECF).

present; by not allowing her enough time to prepare for the hearing before the ALJ; and by going forward with the hearing without Plaintiff securing representation. See id. at 1-2. She also appears to contest the amount of the overpayment. See id. at 2. She states that she contacted "Three Legal Services" but was unable to obtain representation for this appeal. Id. On December 19, 2014, Defendant responded by asserting that the issue is "whether substantial evidence supports the [ALJ]'s Decision that Plaintiff was not without fault in causing the overpayment of $26,880.44 and recovery of the overpayment could not be waived." Memorandum in Support of the Commissioner's Decision (Doc. No. 28; "Def.'s Mem.") at 1 (emphasis and capitalization omitted). Upon review of the parties' arguments and the administrative transcript, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. Standard of Review

This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v.

Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### III. Discussion

#### A. Waiver of Overpayment

Generally, the Social Security Act ("the Act") requires that when an individual has been overpaid SSI benefits, the Administration must recoup the overpaid benefits. 42 U.S.C. § 1383(b)(1)(A); see also 20 C.F.R. §§ 416.535(a), 416.560. A waiver of recoupment of an overpayment can be granted when 1) the individual was without fault in connection with the overpayment; and 2) adjustment or recovery would defeat the purposes of Title XVI of the Act, be against equity and good conscience, or impede efficient or effective administration of Title XVI because of the small amount involved. 42 U.S.C. § 1383(b)(1)(B)(i); 20 C.F.R. § 416.550. "The burden is upon the claimant to establish the negative prerequisite ('without fault'), before the [Administration] considers the second tier of the waiver statute." Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982); see also Kosloff v. Comm'r of Soc. Sec., 581 F. App'x 811, 812 (11th Cir. 2014) (citation omitted). Here, Plaintiff's challenge in the administrative proceedings and in this Court

focuses on the first tier: that is, whether she is without fault in connection with the overpayment.

When determining whether an individual is without fault, the Administration is to consider "all the pertinent circumstances surrounding the overpayment in the particular case." 20 C.F.R. § 416.552. This includes "the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition)." Id. The Administration is to "take into account any physical, mental, educational, or linguistic limitations . . . the individual may have." Id. An individual may be found not to be without fault if the overpayment "resulted from one of the following: (a) Failure to furnish information which the individual knew or should have known was material; (b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts), or (c) The individual did not return a payment which he knew or could have been expected to know was incorrect." Id.

Here, the ALJ in the Decision correctly recited the governing legal standards, Tr. at 16-17, before ultimately finding that Plaintiff had been overpaid benefits in the amount of $26,880.44 during the period of November 1, 2008 to May 21, 2012, and that Plaintiff was

at fault in causing the overpayment, Tr. at 17.[8]  Regarding the overpayment, the ALJ found as follows:

> [Plaintiff] stated she did not know that she had to report jobs or outside income and earnings while receiving social security income benefits.   However, she had been on [SSI] for over 10 years and would have received notices informing her of her duty to report these earnings.   The notice of overpayments . . . from self-employment income in 2009 would also have served to inform [Plaintiff] again about her duty to report.   Despite this, she continued to have subsequent overpayments for the same reason.   She testified she did indeed work and collect cash payments, only reporting the income on her taxes.
>
> She later used her name and social security number change as a reason that she should not be held accountable for some of the previous overpayments.   This is not an issue in this case.   The overpayment balances from her prior record were properly brought forward to her new record.   Just as benefits continued to be paid and quarters of coverage were transferred, so were the overpayments.   The issuance of a new social security number or name change does not absolve one of the duty to report earnings or payback what was improperly collected by a [Plaintiff].   Here, [Plaintiff] repeatedly failed to report her self-employment earnings, both before and after the changes, despite being put on notice that such earnings affected her payments.
>
> As such, I cannot find [Plaintiff] was not at fault in causing the overpayment.

Tr. at 17-18.   As noted, Plaintiff's Complaint states that she "didn[']t work for those years." Complaint at 4.   This allegation is contrary to the evidence, including Plaintiff's own admission during the hearing.   In Plaintiff's memorandum, she does not specifically

---

[8]  The ALJ also noted that "there have been additional overpayments more recently" but indicated that those particular overpayments were not before him for a decision.   Tr. at 17.

challenge the ALJ's waiver findings.⁹  See Pl.'s Mem.  Upon review of the ALJ's well-reasoned Decision, the undersigned finds the denial of the waiver request is supported by substantial evidence.¹⁰

### B. Administration Policies / Right to Representation

Plaintiff contends the Administration violated its policies in holding an early "hearing" without her present; by not allowing her enough time to prepare for the hearing before the ALJ; and by going forward with the hearing without Plaintiff securing representation.  See Pl.'s Mem. at 1-2.  As to the "hearing" that Plaintiff contends occurred without her presence, she is mistaken.  Plaintiff was present for the only hearing at the administrative level: the one before the ALJ on January 16, 2018.  See Tr. at 261-77.  If Plaintiff is referring to the "in person conference," it appears that conference was not held in person because Plaintiff requested it be held over the phone.  See Tr. at 135.  The other decisions that were made in Plaintiff's case were made either after attempting to confer with Plaintiff over the telephone, or upon receipt of her various filings.  In any event, because this Court reviews the ALJ's Decision as the final decision of the

---

⁹ Plaintiff does mention the amount of the overpayment and appears to contend it is too much based on her alleged lack of work during some of the relevant time period.  See Pl.'s Mem. at 2.  The Court has already found Plaintiff admitted to having worked during the relevant time period, and Plaintiff does not raise any specific challenges to the overpayment calculations that were performed by the Administration.

¹⁰ The ALJ did not specifically address in the Decision Plaintiff's testimony that she suffers from mental illnesses for which she takes medication, or her education level.  See Tr. at 15-18 (Decision), 271 (testimony about education), 273 (testimony about mental illnesses and medication).  But, the ALJ specifically asked about these matters during the hearing, Tr. at 271, 273, showing that he took them into account in rendering the Decision.

Administration, and because Plaintiff's administrative remedies were exhausted, any violation of the policy would not result in reversal.

As to Plaintiff's contention that she did not have enough time to prepare for the hearing, see Pl.'s Mem. at 1-2, that too is mistaken. In April 2017, Plaintiff was on notice that the hearing would be held four months later, in August 2017. Tr. at 181; see also Tr. at 210 (reminder). Plaintiff requested additional time to attempt to find a representative, and Plaintiff's request was granted. See Tr. at 228-29. Plaintiff then received an additional four months to attempt to find a representative and to prepare. See Tr. at 230-34 (rescheduling hearing for January 8, 2018). Then, Plaintiff's hearing date was changed a third time—to January 16, 2018—to accommodate Plaintiff. Tr. at 15, 251. Plaintiff waived the 75-day advance notice requirement for this third change. Tr at 251. In short, Plaintiff had plenty of time to prepare.

Finally, Plaintiff appears to contend that she did not understand her rights and she should have had a representative for the hearing. See Pl.'s Mem. at 1-2. The ALJ's decision to conduct the hearing absent counsel for Plaintiff was appropriate only if Plaintiff knowingly and voluntarily waived her right to representation. See 42 U.S.C. § 406; Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995); Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982). However, lack of such waiver only merits reversal of the ALJ's decision if Plaintiff can also establish prejudice, which requires showing that the ALJ failed to develop a full and fair hearing record. See Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).

When proceeding despite an unrepresented claimant's lack of waiver of counsel, the ALJ's "obligation to develop a full and fair record rises to a special duty," Smith, 677 F.2d at 829, to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," id. (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). A showing of prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." Kelley, 761 F.2d at 1540; see also Brown, 44 F.3d at 935-36 (reasoning that a "lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits").

Here, the record belies any contention that Plaintiff was unaware of her rights, including the right to representation: she was advised of the right to representation (among other rights) and referred to potential representatives no fewer than five times prior to the hearing. Tr. at 142, 145-46, 187-88, 209, 229, 236-37. Further, Plaintiff did not complain about not having representation during the hearing. See Tr. at 261-77. Accordingly, Plaintiff knowingly and voluntarily waived that right. Alternatively, even if Plaintiff did not waive the right, she has not attempted to demonstrate prejudice. A review of the hearing transcript shows that the ALJ scrupulously probed for all relevant facts, and the relevant evidence was before him when he issued the Decision. The ALJ did not err in this regard.

## IV. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 12, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record
Pro se party